No. 21-0674 – *State of West Virginia v. Jaquaylla Kessler*

**FILED**
**June 9, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Justice Hutchison, dissenting, joined by Justice Wooton:

I dissent from the majority's opinion, and my dissent begins with the first sentence of the majority opinion. I can excuse that the opinion is written in the fashion of a lurid crime-drama, with characters dismissing "phony explanations" and "angrily demanding" things. But the style of writing obscures what really happened during the trial. The opening sentence describes the "horrific home invasion and robbery" this way: the victim "looked Petitioner Jaquaylla Kessler directly in the face during the crimes, identified her on the day of the crimes as a perpetrator, and unwaveringly reiterated that Petitioner committed the crimes."

My quibble with this opening sentence is simple: that never happened. Petitioner was a stranger in Mingo County, having moved there from Pittsburgh, Pennsylvania, to be with her girlfriend and co-defendant, Heather Musick. She knew no one, and no one knew her. Petitioner's whole theory at trial was that the victim did not know her before the crime, never identified petitioner during the crime or after the crime, and that she was mistakenly arrested later. And there was plenty of evidence to support petitioner's theory.

1

This case was solely one of credibility. Critically, the prosecution's entire case rested on the testimony of one witness: the victim.[1] There was no DNA, fingerprint, hair, fiber, or any other evidence connecting petitioner to the crime scene. During the robbery, the victim knew she was being beaten by Musick because she was a former high school classmate, and at some point, the victim said she was knocked unconscious by Musick. But the other person in the house? The victim could only say the other person was "jet black, tall, skinny, and looked like a man." After the victim was robbed, she went to the hospital where she reported that she was assaulted "by a few people at her house" and that "she knew one of them." When the victim talked to the police afterward, she again did not identify petitioner. There was no out-of-court photo identification. There was no out-of-court lineup. In her trial testimony, the victim said she did not know petitioner, at times misidentifying her as "Jacqueline," and said she had never seen petitioner before the crime. The only "identification" of petitioner occurred when the victim pointed at petitioner as she sat at the defense table and said, "that's her." The victim said Musick referred to her compatriot in crime as "Q." The victim made some statements at trial suggesting that she "knew" petitioner was "Q" only by, in the months after the crime, searching social media sites, examining pictures of Musick, and deducing that because petitioner was Musick's girlfriend and had a "Q" in her name, she was the "Q" she heard

---

[1] There were only two other witnesses who testified on behalf of the prosecution at trial. Both were police officers who testified about their participation in the search of the residence of petitioner and Musick.

2

Musick address during the robbery. Incidentally, Musick did not refer to petitioner as "Q" on social media, but rather referred to her by her name (Jaquaylla).

Let there be no doubt that the majority opinion spun the record, from the first sentence, to make it seem as though there was absolutely no dispute petitioner was identified by the victim as a guilty party. To the contrary, the record was in dispute, the facts were not clear, and there were many disputed questions of fact for a jury to resolve. Hence, at trial, petitioner fairly asserted a defense of mistaken identity.

Plant that defense firmly in your mind: the facts during the trial were disputed as to whether petitioner was involved in committing the crime. I reiterate that this case was one of credibility between the victim's claim that petitioner participated in the crime, and petitioner's claim that she did not.

With that in mind, now consider the majority opinion's finding that the circuit court erred when it allowed the prosecutor to inject evidence of petitioner's former conviction into the trial.[2] The majority opinion reaches the correct conclusion that the prosecutor improperly offered the conviction as Rule 404(b) evidence. The majority opinion also correctly determines that, contrary to the State's position, petitioner did not open the door to the admission of this prior conviction.

---

[2] Petitioner pleaded guilty to conspiring with Musick to deliver drugs. The conviction was subsequently dismissed after petitioner completed the program in the local Drug Court.

Where the majority opinion goes off track, however, is in its harmless error analysis. The opinion is basically a classic form of bootstrapping: because petitioner was convicted, the majority opinion presumes that the facts supporting the conviction are the only ones the jury relied upon or found credible. Any factual disputes favoring petitioner can be ignored. Therefore, by presuming that all evidence and inferences show petitioner was actually in the room helping Musick beat and rob the victim, it was harmless for the prosecutor to offer evidence of a felony conviction that would skew the attitude of the jury toward convicting petitioner. The majority opinion keenly declares that the victim identified petitioner as the perpetrator, and thence effectively finds that the prosecutor's and circuit court's actions, putting their fickle fingers on the scale of justice, were harmless in the end.

And this is the core of my dissent. The record is clear that the wrongly admitted Rule 404(b) evidence was prejudicial and eviscerated petitioner's defense. Had the evidence of a prior conviction been disclosed and discussed before trial, petitioner may not have testified. Or the cross-examination of the victim might have been done differently. Or petitioner might have simply pleaded guilty to a lesser offense. Further, the circuit court's admission of the Rule 404(b) evidence crippled petitioner's whole defense of "I wasn't there" because the 404(b) evidence made her look evasive, untrustworthy, or look like just another drug-using thief.

Petitioner's defense was that she did not commit any of the crimes and was not at the victim's home. She pointed the finger at Mandy Porter – the individual who was

the connector between all the players and who was never charged with any crime as far as the record reflects. As previously stated, petitioner's entire defense was a swearing match between the victim and the petitioner – it relied upon the jury believing petitioner's story. The improperly admitted 404(b) evidence completely undermined any chance petitioner may have had of convincing the jury that she was credible. Conversely, had petitioner known that the State intended to introduce other crime evidence, she may have decided to pursue a plea agreement, or pursue a different trial strategy – maybe one in which she did not take the stand. The majority opinion's conclusion that the Rule 404(b) evidence was not prejudicial is beyond comprehension.

I therefore respectfully dissent. I am authorized to state that Justice Wooton joins in this dissent.